* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the Parties at the hearing as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, Plaintiff was an employee of Defendant-Employer.
3. The Carrier on the risk for Defendant-Employer in this claim was formerly known as Atlantic Mutual Insurance Companies and is currently known as GAB Robbins, Inc.
4. Plaintiff's average weekly wage in February 2001, and August 31, 2001, was $55,000.00 annually, which yields an average weekly wage of $1,057.69. The maximum compensation rate for 2001 was $588.00.
5. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction over the parties and the subject matter.
6. Plaintiff alleges that on February 6, 2001, he stumbled over a forklift guard, and sustained leg, hip, and/or back injuries by accident arising out of and in the course of his employment. Plaintiff further alleges that on August 31, 2001, he slipped on oil on the floor and although he did not fall, sustained either additional injuries or aggravated the injuries from the February 6, 2001 incident. Defendants deny both of Plaintiff's allegations and contend that Plaintiff has not sustained a compensable injury by accident arising out of and in the course of his employment either in February 6, 2001, or on August 31, 2001.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was 61 years of age. In addition to a high school diploma, he has an associate degree in an accounting related field from a junior college, a bachelor's degree with a double major in finance and accounting from the University of Southwest Louisiana received in 1985, a Master of Business Administration degree from Charleston Southern College received in 1993, and a seminary degree from Liberty Baptist Theological Seminary received in 1994. He has worked in the area of cost accounting during his entire professional life. Plaintiff also served in the United States Air Force.
2. Plaintiff began working for Defendant-Employer in May 2000, as a cost accountant. Plaintiff's job duties with Defendant-Employer as a cost accountant required him to prepare cost accounting reports for upper management. In order to obtain the information needed to prepare these reports, he would be required to go out into the manufacturing facilities and observe production, take inventories, obtain data from machines, and perform similar duties. The manufacturing facility was spread out among several buildings on a campus located in Charlotte, North Carolina.
3. On February 6, 2001, while Plaintiff was stepping out of the production office in the manufacturing building, he tripped over a forklift barrier that was bolted to the floor. This caused him to lose his balance and he twisted and fell against a golf cart that was parked near the barrier, striking his lower back and left hip against the golf cart. He felt an immediate onset of intense pain in his left hip, buttock, leg, and lower back. The pain was very intense although he "walked it off" and returned to work.
4. On the date of his injury, Plaintiff reported the incident to his supervisor "Jerry" who indicated his intention to fill out an accident report.
5. On August 31, 2001, Plaintiff was walking across the concrete floor in the manufacturing plant and inadvertently stepped into a pool of spilled hydraulic fluid or oil, causing him to slip and causing his right leg to go out from under him. His left knee buckled and he went down partially, as though he was going to do a "cheerleader's split." He was able to catch himself with his walking cane but the incident exacerbated his pre-existing hip, leg and back condition.
6. Following the February 6, 2001 incident, Plaintiff sought treatment with the Veterans' Administration Hospital and was subsequently diagnosed with avascular necrosis in the left hip.
7. Plaintiff did not fill out a written accident report for his employer pertaining to the February 6, 2001 incident until July 6, 2001, when he was requested to do so by the company's personnel director. Plaintiff had a reasonable excuse for not giving written notice of his injury because he gave oral notice of his injury and at that time his supervisor indicated he would file a written report. Defendants were not prejudiced by Plaintiff's failure to give written notice of his injury because they had actual notice.
8. After the August 31, 2001 fall, Plaintiff's hip condition worsened. There were times when he had difficulty walking. He continued to perform his job duties, which exacerbated his pain.
9. On September 26, 2001, Defendant-Employer's Chief Financial Officer, Mark McClure, made the decision to terminate Plaintiff's employment on the stated basis of economics and poor job performance. The greater weight of the evidence establishes that Plaintiff's job performance was satisfactory and the Full Commission gives little weight to testimony indicating that Plaintiff was terminated for poor job performance.
10. Plaintiff was paid by Defendant-Employer through October 15, 2001, and had hip replacement surgery due to his avascular necrosis at the Veterans' Administration Hospital on October 16, 2001. After his surgery, Plaintiff was restricted to lifting no more than 10 pounds, no bending, no stooping, and was required to change positions every 30 minutes.
11. Dr. Scott Stegbauer, an orthopedic surgeon practicing in Walterboro, South Carolina, was engaged by Plaintiff's original counsel to review the medical records and render an opinion on medical causation. Dr. Stegbauer testified that if Plaintiff's avascular necrosis was limited to the left hip, rather than bilateral; and, if there was no history of chronic alcohol abuse, then the trauma Plaintiff sustained in his fall of February 2001, would be the most likely cause for the avascular necrosis to the left hip.
12. The greater weight of the medical evidence establishes that Plaintiff's avascular necrosis exists only in the left hip, that it did not exist prior to the February 6, 2001 incident at work, and that as of the most recent medical information in the record, there is no objective evidence of avascular necrosis developing in the right hip.
13. Dr. Maria Galus, Plaintiff's primary care physician at the Veterans' Administration Hospital, testified that Plaintiff does not have a history of chronic alcohol abuse, that based on her review of the medical literature, avascular necrosis is linked to chronic alcoholism only when liver damage and liver cirrhosis due to alcoholism have occurred, and that trauma is one of the major causes for avascular necrosis to the hip.
14. The greater weight of the evidence establishes that although Plaintiff has on occasion engaged in binge drinking and has consumed alcoholic beverages on a regular basis, he has no liver damage and is not a chronic abuser of alcohol.
15. The Full Commission finds that Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer on February 6, 2001, and on August 31, 2001. Plaintiff's avascular necrosis of the left hip developed as a result of the trauma he suffered from his fall on February 6, 2001, and the August 31, 2001 aggravation of his hip condition. Defendant-Employer did not appeal from the Deputy Commissioner's finding of compensability for the avascular necrosis.
16. In addition to his avascular necrosis, the Full Commission finds that Plaintiff also suffered back pain as a result of his fall on February 6, 2001. The physicians treating Plaintiff have not recommended any invasive treatment for the back injury and the narcotic pain medication that he takes for the hip pain appears to address the back pain as well.
17. Despite his termination from employment on September 28, 2001, Plaintiff would not have been able to work for approximately eight weeks following his October 16, 2001 hip replacement surgery. As of December 17, 2001, Plaintiff was ready to begin an effort to return to work and he commenced a reasonable job search effort until he began receiving Social Security Disability benefits "the last of October [2004]," and stopped looking for employment. Without vocational assistance from Defendants, Plaintiff looked for suitable employment on his own by submitting more than one hundred applications for jobs he felt he was qualified and able to perform. He sought jobs through the Employment Security Commission, newspapers and other leads. The job search resulted in three interviews and no offers of employment.
18. Although highly educated, Plaintiff's advanced age, his physical limitations due to his compensable injuries, and his pre-existing and injury-related health conditions, including severe chronic pain syndrome, hypertension, disc disease, arthritis, depressive disorder and a number of other health conditions diminish his employment opportunities. There is insufficient evidence at this time from which to find that Plaintiff is physically or mentally incapable of working in any employment or that seeking suitable employment after October 2004 would have been futile. Therefore, the Full Commission finds that Plaintiff is currently not permanently and totally disabled. Plaintiff is in need of vocational assistance to increase his likelihood of finding suitable employment.
19. As a result of his injuries and resulting surgery, Plaintiff was totally disabled from October 16, 2001 through October 31, 2004.
20. Plaintiff's termination was not due to misconduct.
21. The medical treatment Plaintiff received for his compensable injuries was causally related to his workplace injuries and was reasonably required to effect a cure, provide relief and lessen his disability.
22. Plaintiff's average weekly wage in February 2001, and August 31, 2001, was $55,000.00 annually, which yields an average weekly wage of $1,057.69. The maximum compensation rate for 2001 was $588.00.
23. Plaintiff may have some permanent partial disability or other permanent injury resulting from his compensable injuries by accident. This issue should be reserved for subsequent determination.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer on February 6, 2001, and on August 31, 2001. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has proven by the greater weight of the evidence that as a result of his accidents on February 6, 2001 and on August 31, 2001, he developed disabling avascular necrosis of the left hip and back pain. N.C. Gen. Stat. § 97-2.
3. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent. Perkins v. U.S. Airways, ___ N.C. App. ___,628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In the instant case, despite his termination on September 28, 2001, Plaintiff would not have been able to work for approximately eight weeks following his October 16, 2001 hip replacement surgery. As of December 17, 2001, Plaintiff was ready to begin an effort to return to work and he commenced a reasonable job search effort until he began receiving Social Security Disability benefits "the last of October [2004]," and stopped looking for employment. Without vocational assistance from Defendants, Plaintiff looked for suitable employment on his own by submitting more than one hundred applications for jobs he felt he was qualified and able to perform. He sought jobs through the Employment Security Commission, newspapers and other leads. The job search resulted in three interviews and no offers of employment. Although highly educated, Plaintiff's advanced age; physical restrictions due to his injury; and health condition, including severe chronic pain syndrome, hypertension, disc disease, arthritis, depressive disorder and a number of other conditions diminished his employment opportunities. Therefore, Plaintiff has proven disability under the second prong of Russell.
4. Plaintiff's termination was not due to misconduct.Seagraves v. The Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996).
5. Plaintiff's average weekly wage on February 6, 2001, and August 31, 2001, was $55,000.00 annually, which yields an average weekly wage of $1,057.69. The maximum compensation rate for 2001 was $588.00. N.C. Gen. Stat. § 97-2(5).
6. As a result of his compensable injuries to his hip and back, Plaintiff is entitled to temporary total disability compensation at the rate of $588.00 per week for the period from October 16, 2001 through October 31, 2004. Plaintiff's entitlement to permanent partial disability or other compensation under the North Carolina Workers' Compensation Act is reserved for subsequent determination. N.C. Gen. Stat. §§ 97-29; 97-31.
7. Plaintiff is entitled to have Defendants pay for medical treatment for his injury to his left hip and back, for so long as such treatment is reasonably required to effect a cure, provide relief and lessen his disability. N.C. Gen. Stat. §§ 97-2(19);97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney fee provided below, Defendants shall pay to Plaintiff $588.00 per week from October 16, 2001 through October 31, 2004. This amount has accrued and shall be paid to Plaintiff in a lump sum.
2. A reasonable attorney fee of 25% of the compensation awarded to Plaintiff herein is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel.
3. Defendants shall pay for all medical expenses incurred or to be incurred in the future by Plaintiff for his left hip and back for so long as such treatment is reasonably required to effect a cure, provide relief and lessen his disability when bills for same have been submitted and approved according to Industrial Commission procedure.
4. Plaintiff's entitlement to permanent partial disability or other compensation under the North Carolina Workers' Compensation Act is reserved for subsequent determination.
5. Defendants shall pay the costs.
This the __ day of October 2006
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN